IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TRENTON REYNOLDS,

Plaintiff,

v.

WESTERN SUGAR COOPERATIVE,

Defendant.

8:18CV3064

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff Trenton Reynolds's ("Reynolds") Motion to Exclude Opinions (Filing No. 74) of defendant Western Sugar Cooperative's ("Western Sugar") economist Eric C. Frye ("Frye") pursuant to Federal Rules of Civil Procedure 403 and 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Reynolds's motion is granted in part and denied in part for the reasons below.

**I.   BACKGROUND**

On January 6, 2017, Reynolds was severely burned in an industrial accident at Western Sugar's refinery in Scottsbluff, Nebraska. Western Sugar has conceded liability for the accident, but the parties dispute the nature and extent of Reynolds's damages, including the amount of lost earnings and the cost of medical care and other services.

To aid its defense, Western Sugar retained Frye to provide expert opinions about Reynolds's economic damages. Frye reportedly holds a Bachelor of Arts in Economics from DePauw University and a Master of Business Administration in Finance and Economics from Indiana University. He has twenty-five years' experience in investment banking, business evaluation, and financial analysis and is a certified financial analyst.

Reynolds does not challenge Frye's education, training, and expertise in the field of economics or the reliability of his economic opinions. Rather, Reynolds contends Frye offers certain opinions that "exceed the scope of his expertise and stray into the areas of

vocational rehabilitation and life care planning." Reynolds asks the Court to exclude those opinions as unsupported and irrelevant.

Western Sugar maintains Frye's opinions are well within the scope of his experience and expertise. As Western Sugar sees it, Frye "simply applies economic principles to the facts presented to him—primarily the opinions of [Reynolds's] vocational rehabilitation and life care plan experts—in an effort to quantify [Reynolds's] economic losses."

## II. DISCUSSION
### A. Legal Standard

"Federal Rule of Evidence 702 governs admissibility of expert testimony" in this diversity case.[1] *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001); *see also Bradshaw v. FFE Transp. Servs., Inc.*, 715 F.3d 1104, 1107 (8th Cir. 2013). Designed to liberalize the admissibility rules and relax the traditional barriers to expert testimony, *see Daubert*, 509 U.S. at 588, Rule 702 rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[1]Western Sugar is a Colorado corporation with its principal place of business in Denver, Colorado. Reynolds is a citizen of Wyoming. *See* 28 U.S.C. § 1332(a)(1) (giving district courts original jurisdiction of civil actions "between citizens of different States" where, as here, the amount in controversy exceeds $75,000).

The rule "does not rank academic training over demonstrated practical experience." *Circle J Dairy, Inc. v. A.O. Smith Harvestore Prods., Inc.*, 790 F.2d 694, 700 (8th Cir. 1986). It requires the Court to "function as a gatekeeper to 'ensure that any and all scientific testimony or evidence is not only relevant, but reliable.'" *Vasquez v. Colores*, 648 F.3d 648, 653 (8th Cir. 2011) (quoting *Daubert*, 509 U.S. at 589).

At root, Rule 702 is a rule "of admissibility rather than exclusion." *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991). "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Katzenmeier v. Blackpowder Prods., Inc.*, 628 F.3d 948, 952 (8th Cir. 2010) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)). Western Sugar "bears the burden to prove" the admissibility of Frye's opinions. *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1114 (8th Cir. 2007).

"Even when the requirements of Rule 702 are met, however, '[t]he court may exclude [the] evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Strong*, 826 F.3d 1109, 1115 (8th Cir. 2016) (quoting Fed. R. Evid. 403). Although the Court "'has broad discretion' in balancing the reliability and probative value of evidence 'against its prejudicial effect,'" *United States v. Nickelous*, 916 F.3d 721, 724 (8th Cir. 2019) (quoting *United States v. Kime*, 99 F.3d 870, 883 (8th Cir. 1996)), it can abuse that discretion by "permitting an expert to testify outside of his field." *Khoury v. Philips Med. Sys.*, 614 F.3d 888, 893 (8th Cir. 2010) (citing *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715-16 (8th Cir. 2001)).

B.   **Frye's Challenged Opinions**

Reynolds identifies two broad categories of opinions he contends exceed Frye's expertise as an economist—opinions related to Reynolds's vocational future and opinions about his life-care needs. The Court takes each category in turn.

1.   **Vocational Rehabilitation**

Reynolds first argues Frye improperly opines that "Reynolds should move from his home in Wyoming to Colorado to take advantage of a higher minimum wage rate." Reynolds also seeks to exclude any opinion "predicated on the assumption that [he] will achieve an advanced degree (AA or BS) in the field of mechanical engineering or related fields" or "predicated on the assumption that [he] would have achieved" such a degree "even if he had not been injured."

Upon careful review, the Court concludes Frye's opinions based on Reynolds's vocational future are not, as Reynolds contends, improper, irrelevant, and so unreliable and misleading as to require exclusion at this stage. *See*, *e.g.*, *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006) ("Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility."); *Hurst v. United States*, 882 F.2d 306, 311 (8th Cir. 1989) ("A trial court should exclude an expert opinion only if it is so fundamentally unsupported that it cannot help the factfinder.").

Notwithstanding Reynolds's contention to the contrary, Frye does not "dictate" or "distastefully propose" that Reynolds should abandon his family and move to Colorado "to mitigate the amount [Western Sugar] should pay him." Aside from using the dubious term "correct" to pivot from calculations based on the minimum wage in Wyoming to alternative calculations based on the minimum wage in Colorado, Frye does not make any normative statement about where Reynolds should live. Frye's calculations of Reynolds's potential earnings loss are framed as alternatives that depend on a choice Reynolds might reasonably make given the facts in this case.

As for any opinions based upon the possibility of Reynolds obtaining additional education, it is neither categorically improper nor beyond the expertise and experience of an economist to provide opinions on alternative-earning scenarios fairly presented by the analysis performed by the opposing party's vocational expert. Reynolds's assertions that "Frye in fact makes a prediction" that Reynolds *will* attain an engineering degree and that Frye has offered an irrelevant and "improper vocational rehabilitation opinion" are unpersuasive. And the Court is unable, at this point, to agree with Reynolds that his vocational expert's opinion "that it was not 'reasonably probable' that Mr. Reynolds would return to school but-for his injuries" conclusively renders "the financial effects of that" possibility unquestionably irrelevant regardless of the testimony or other evidence that might be presented to the jury at trial.

Reynolds also repeatedly complains Frye "overlooks," "elides," and "ignores a mountain of contradictory facts" and takes "illogical" and unfounded "inferences to the extreme." But those issues go more to the weight and credibility of Frye's opinions than to their admissibility and will ultimately be for the jury to decide. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997).

It will be up to Reynolds to challenge Frye's opinions by vigorously cross-examining him and effectively presenting contrary evidence. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). If, at trial, Reynolds decides Frye's testimony lacks sufficient foundation or runs too far afield, he can object.

### 2. Life-Care Needs

The result is much the same with respect to Reynolds's request to exclude opinions on matters Reynolds is convinced "are solely within the scope of a life care planner, not an economist." His arguments again often go more to weight than admissibility. *See, e.g., United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003)

5

(explaining the judge's "gatekeeper role should not . . . invade the province of the jury, whose job it is to decide issues of credibility and to determine the weight that should be accorded evidence").

Specifically, Reynolds seeks to exclude opinions that he (1) "will only have to pay half the maximum amount charged for hospital and medical services," (2) "will only require generic prescription medications for the remainder of his life," and (3) "will never need household assistance or essential services." According to Reynolds, "Frye inappropriately attempts to invade the province of a life care planner" by offering such opinions.

The Court's review of Reynolds's motion is again needlessly made more difficult because Reynolds challenges opinions that Frye does not actually give. Reynolds's arguments are often based on false premises and gross distortions of Frye's opinions.

For example, Frye does not suggest he "view[s] himself as a medical doctor" who can dictate Reynolds's "future medication choices for him." What's more, Frye never opines Reynolds will only need generic prescriptions for the rest of his life and should forgo the benefits of some as-yet-undiscovered breakthrough medication or pay out of pocket for such drugs should they become available in the future. Frye makes a much-narrower point about Reynolds's life-care expert's calculations. Likewise, Frye does not, as Reynolds contends, say Reynolds "does not, and will not need an allowance for 'essential' or household services." Such hyperbole undermines Reynolds's credibility and detracts from the efficacy of his arguments.

Turning to Reynolds's more-measured arguments, the Court again sees no compelling reason at this stage to categorically exclude Frye's opinions related to what Reynolds calls his "life care planning options." *See Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) ("Rule 702 only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact,

which is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'" (quoting 29 Charles Alan Wright & Victor James Gold, Federal Practice And Procedure: Evidence § 6265 (1997))). Whatever the precise boundaries of the "exclusive province" of a life-care planner, which the Court need not attempt to delineate at this time, opinions related to the cost of Reynolds's future medical treatment and medications generally fall within the scope of Frye's experience and expertise as a trained economist. Those subjects are far from exclusive to a life-care planner.

And, at this point, the Court is not convinced Frye's sources and methodology are so flawed as to require "the wholesale exclusion of [Frye's] testimony." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000) (favoring "thorough cross-examination"); *accord Miles v. Gen. Motors Corp.*, 262 F.3d 720, 724-25 (8th Cir. 2001) (concluding a challenge to an expert's "knowledge and methodology goes to the weight that the jury accords the testimony rather than to its admissibility"). Indeed, the parties appear to agree on some basic premises and sources, even if they disagree on the conclusions to be drawn. The Court finds the parties' remaining disagreements on these issues, including their dispute over the nuances of the collateral-source rule, are better addressed after further development of the record.

One last topic bears mention—household services. While it is not improper for Frye to (1) question the economic basis for an estimate of $200 per month in services and (2) provide alternative calculations for the jury to consider depending on its resolution of key issues related to Reynolds's needs, some of Frye's statements on this topic—like his discussion of the potential impact of psychiatric treatment—appear to veer beyond his stated area of expertise.

In response to Reynolds's motion, Western Sugar states Frye has "not offered an opinion regarding [Reynolds's] need for essential services." In his deposition, Frye similarly denied any intention to give any opinion as to the need for household services or the effect of psychiatric treatment. The Court will hold him to that. Reynolds's

7

motion to exclude is granted with respect to any opinion regarding Reynolds's medical need for household services. It is denied in all other respects.

For the foregoing reasons, plaintiff Trenton Reynolds's Motion to Exclude Opinions (Filing No. 74) is granted in part and denied in part.

IT IS SO ORDERED.

Dated this 20th day of August 2019.

BY THE COURT:

Robert F. Rossiter, Jr.
United States District Judge